# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

|  |  |  |
|---|---|---|
| TOM RILEY et al., individually, and on behalf of all others similarly situated, | ) ) ) | Case No. 6:22-cv-00499-RBD-EJK |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| GENERAL MOTORS LLC, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

## DEFENDANT GENERAL MOTORS LLC'S MOTION FOR SPOLIATION SANCTIONS

For the reasons explained in the accompanying memorandum of law, Defendant General Motors LLC ("GM") moves to sanction Heather Shrum for spoliating the evidence at the center of her claims: her vehicle's paint. GM respectfully requests as a sanction for this spoliation: (i) dismissal of Shrum's claims with prejudice or, alternatively, her disqualification as a putative class representative, (ii) attorneys' fees and costs against Shrum for the expense GM incurred in bringing this Motion, and (iii) any other sanctions or relief this Court deems appropriate.

/s/ Jonathan S. Klein
Florida Bar No. 125254
jklein@mayerbrown.com
Archis A. Parasharami (*pro hac vice*)
aparasharami@mayerbrown.com
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Phone: (202) 263-3000
Fax: (202) 263-3300

/s/ John Nadolenco (*pro hac vice*)
jnadolenco@mayerbrown.com
MAYER BROWN LLP
350 South Grand Avenue 25th Floor
Los Angeles, CA 90071
Phone: (213) 229-9500
Fax: (213) 576-8179

Justing Weiner
weiner@bsplaw.com
BUSH SEYFERTH PLLC
100 W. Big Beaver Road Suite 400
Troy, MI 48084
Phone: 248-822-7841

*Attorneys for General Motors LLC*

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF LAW ...........................................................................1

BACKGROUND .........................................................................................2

    A.    Plaintiffs Sue Over An Alleged Paint Defect ................................2

    B.    The Parties Negotiate and Execute A Protocol For the Inspection Of The Subject Vehicles ................................................3

    C.    On September 19, 2022 Shrum Denies Having Any Documents Related To Any Repainting Of Her Vehicle ...............5

    D.    Shrum Fails To Timely Produce Documentation Of Her Vehicle's Repainting ........................................................................5

    E.    Shrum Discloses The September 15, 2022 Repainting On The Day Of The Inspection...............................................................6

ARGUMENT ..............................................................................................8

I.    SHRUM SPOLIATED EVIDENCE BY REPAINTING HER VEHICLE ...........................................................................................9

    A.    The Spoliated Evidence Existed at One Time...............................9

    B.    Shrum Had A Duty To Preserve Her Vehicle With The Original Paint .......................................................................... 10

    C.    The Spoliated Evidence Is Crucial To GM's Defense................. 12

    D.    Shrum Acted In Bad Faith ......................................................... 18

II.    SHRUM'S SPOLIATION WARRANTS DISMISSAL OF HER CLAIMS OR, ALTERNATIVELY, HER DISQUALIFICATION AS A PUTATIVE CLASS REPRESENTATIVE................................... 21

III.    THE COURT SHOULD AWARD GM THE ATTORNEYS' FEES INCURRED IN BRINGING THIS MOTION ...................................... 25

CONCLUSION......................................................................................... 25

CERTIFICATE OF SERVICE................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Sunbeam Corp.*,
    865 F. Supp. 1267 (N.D. Ill. 1994) ............................................................. 23

*Arnold v. Charter Commc'ns, LLC*,
    2022 WL 2275168 (M.D. Fla. June 23, 2022) ............................................ 14

*In re Arris Cable Modem Consumer Litig.*,
    327 F.R.D. 334 (N.D. Cal. 2018)................................................................ 24

*Beers v. Gen. Motors Corp.*,
    1999 WL 325378 (N.D.N.Y. May 17, 1999) ............................................... 23

*Falcon v. Philips Elecs. N. Am. Corp.*,
    304 F. App'x 896 (2d Cir. 2008).................................................................. 24

*Flury v. Daimler Chrysler Corp.*,
    427 F.3d 939 (11th Cir. 2005)............................................................*passim*

*Graff v. Baja Marine Corp.*,
    310 F. App'x 298 (11th Cir. 2009) .......................................................... 9, 13

*Landry v. Charlotte Motor Cars, LLC*,
    226 So. 3d 1053 (2d DCA 2017).................................................................. 18

*Lidey v. Moser's Rides, SRL*,
    2018 WL 6308012 (M.D. Fla. Sept. 7, 2018)......................................... 16, 17

*Mooradian v. FCA US, LLC*,
    286 F. Supp. 3d 865 (N.D. Ohio 2017) .................................................. 14, 24

*Optowave Co. v. Nikitin*,
    2006 WL 3231422 (M.D. Fla. Nov. 7, 2006)..................................................9

*Pagan v. Abbott Lab'ys, Inc.*,
    287 F.R.D. 139 (E.D.N.Y. 2012) ................................................................ 24

*Penick v. Harbor Freight Tools, USA, Inc.*,
    481 F. Supp. 3d 1286 (S.D. Fla. 2020) ....................................................... 19

*Remy v. Ford Motor Co.,*
   2006 WL 3937343 (V.I. Nov. 30, 2006) ........................................................ 22

*Se. Mech. Servs., Inc. v. Brody,*
   657 F. Supp. 2d 1293 (M.D. Fla. 2009) ...................................................... 8, 9

*Silvestri v. Gen. Motors Corp.,*
   271 F.3d 583 (4th Cir. 2001) ....................................................................... 22

*St. Cyr v. Flying J Inc.,*
   2007 WL 1716365 (M.D. Fla. June 12, 2007) .................................. 10, 11, 12

*Swofford v. Eslinger,*
   671 F. Supp. 2d 1274 (M.D. Fla. 2009) ...................................................... 25

*Tesoriero v. Carnival Corp.,*
   965 F.3d 1170 (11th Cir. 2020) ............................................................. 19, 22

*Tripp v. Walmart, Inc.,*
   2023 WL 399764 (M.D. Fla. Jan. 25, 2023) ............................................ 12, 25

## MEMORANDUM OF LAW

Plaintiff Heather Shrum's claims against GM are all based on the allegation that the paint or clearcoat on her 2015 Chevrolet Tahoe was defective. The evidence at the heart of her claim is the vehicle's paint itself. But Shrum destroyed that evidence by repainting her vehicle[1] after suing and without notifying GM. More troubling, Shrum repainted her vehicle just *two days* after agreeing to an Inspection Protocol that expressly obligated Shrum to "preserve" the vehicle until after GM could inspect it.

Moreover, just *four days* after repainting the vehicle, and despite possessing a receipt documenting that repainting, Shrum concealed her destruction of evidence by falsely representing that she had *no documents* responsive to GM's request for all documents related to any repainting or re-application of clearcoat performed on her vehicle. GM first learned that Shrum had already repainted her vehicle during her vehicle inspection.

Shrum's intentional destruction of the paint at issue—despite knowing that GM planned to inspect the paint and despite agreeing just days earlier that she would continue to preserve her vehicle intact—warrants dismissal of her claims with prejudice. That sanction is fully warranted to remedy the harm

---

[1] GM refers to the vehicle that Shrum alleges owning as "her vehicle" for simplicity, but confirmed during Shrum's January 31, 2023 deposition that Shrum is not the registered owner of the vehicle. Ex. 1 at 115:8-21. GM accordingly preserves the argument that Shrum lacks standing to bring any of her claims.

and deter future similar conduct—particularly when, as here, Shrum intentionally delayed disclosing the spoliation to GM. At the very least, Shrum should be disqualified as a putative class representative—both because her actions make her an atypical member of the class by giving GM additional unique defenses against her, and because her actions demonstrate that she is inadequate to perform her duties as a named plaintiff. In addition, GM should be awarded its attorneys' fees incurred in bringing this motion.

## BACKGROUND

### A.    Plaintiffs Sue Over An Alleged Paint Defect.

Plaintiffs allege that a defect in the paint or clearcoat on certain GM vehicles causes the paint "to microblister, delaminate, peel, fade, and bubble." First Amended Class Action Complaint ("FAC"), Doc. 41 ¶ 98. Based on this allegation, Plaintiffs bring claims for breach of warranty, unjust enrichment, fraud, and violation of certain state consumer-protection statutes.[2]

Plaintiffs sued on March 9, 2022 and filed the operative FAC on June 24, 2022. In her recent deposition, Shrum testified that she bought a used 2015 Chevrolet Tahoe in May 2016 from Courtesy Chevrolet in San Diego, California.

---

[2] GM has explained in separately filed motions why Tom Riley's claims are subject to arbitration, why all Plaintiffs fail to state any claim as a matter of law and the Court lacks personal jurisdiction over the claims of Sherry Kilburn, and why the Court should strike Plaintiffs' nationwide class allegations. Docs. 35, 47, 48. Plaintiffs conceded that the court lacks personal jurisdiction as to Kilburn's claims and "do not oppose dismissal" of her claims. Doc. 54 at n.3. In addition, Plaintiffs conceded that Shrum's design defect claim fails and should be dismissed. *Id.* GM's motions remain pending.

Declaration of Elisabeth Anderson, Ex. 1 at 58:2-8;[3] FAC ¶ 41. Shrum says that, in November 2019, she noticed discoloration and delamination of the clearcoat on her car. Ex. 1 at 100:17-19; FAC ¶ 49. That same month, she brought her vehicle to a Chevrolet dealership and received an estimate to repair the hood and roof for $1,543.00. Ex. 1 at 112:10-113:6; FAC ¶ 50 (alleging the estimate was for the "hood only"). The day after visiting the dealership, Shrum posted to the Facebook group "Class Action Settlement Lovers" asking "if anyone has any experience with the process to start a class action," because her "2015 GM Chevrolet Tahoe hood and roof needed to be repainted." Ex. 17 at 1.

According to the FAC, Shrum had not repainted her vehicle before filing that complaint. In fact, she alleges that her vehicle "continues to worsen" and provides two undated photos purporting to illustrate the appearance of the vehicle "today" (the date the FAC was filed). FAC ¶ 52. Shrum also testified at her deposition that she had not repainted her vehicle before filing the FAC. Ex. 1 at 132:25-133:4.

**B.    The Parties Negotiate and Execute A Protocol For the Inspection Of The Subject Vehicles.**

The parties began negotiating an Inspection Protocol following the Court's scheduling conference in May 2022. Plaintiffs signed the Inspection Protocol on September 13, 2022, and GM signed the Inspection Protocol on

---

[3] All exhibits cited herein are attached to the Declaration of Elisabeth Anderson.

September 14, 2022. Ex. 2 at 1.

The Inspection Protocol provides: "GM and one or more consultants retained by GM will have the opportunity to conduct inspections of each of the Plaintiffs' vehicles that are the subject of litigation." Ex. 3 at 1. Plaintiffs agreed to "continue to ***preserve for inspection*** their currently owned or leased Subject Vehicle(s) until such time as disposition is permitted under this Protocol," that is, until "the successful completion of an inspection pursuant to the [Protocol]." *Id.* at 4 (emphasis added). And "[i]f any Plaintiff desires to sell, transfer, trade, or otherwise dispose of his or her Subject Vehicle before an inspection has taken place, then such Plaintiff shall provide no fewer than forty-five (45) days' written notice to GM's Counsel." *Id.* In addition, the Protocol specified: "To the extent Plaintiffs have removed parts of the Subject Vehicles prior to the inspection or otherwise permitted the Subject Vehicles to be modified, repaired, destroyed, or otherwise altered prior to the inspection, GM reserves all rights and objections resulting from that modification, repair, destruction, or alteration, including claims for spoliation of evidence." *Id.* at 5.

The Protocol contemplated that GM would "measure the total coating thickness of the vehicle's paint," photograph or image the vehicle, "measure and document any and all areas of damage or other conditions of the vehicle," and use "other non-destructive testing, examination or assessment." *Id.* at 2-3.

### C.    On September 19, 2022 Shrum Denies Having Any Documents Related To Any Repainting Of Her Vehicle.

GM served document requests on Shrum on August 19, 2022, to which Shrum responded on September 19, 2022. GM requested, among other things, documents related to any repainting of Shrum's vehicle. Ex 4. Shrum's September 19, 2022 response stated that no documents "related to [any] repainting" of the vehicle exist:

> **REQUEST NO. 11:**   For the Subject Vehicle, if you have repainted or applied any third-party clear coat (or caused to have either take place), please produce all documents related to the repainting or application of clear coat.
>
> **RESPONSE:** To Plaintiff's knowledge, no responsive documents exist.

*Id.* at 4. That was false: Shrum repainted her vehicle just four days earlier and had the receipt in her possession. *See* Ex. 14 at 1; Ex. 1 at 126:7-10.

### D.    Shrum Fails To Timely Produce Documentation Of Her Vehicle's Repainting.

GM followed up regarding the expected timing for Shrum's document production on October 19, 2022, November 9, 2022, and November 10, 2022. Ex. 5 at 1; Ex. 6 at 1; Ex. 7 at 1. On November 14, 2022, Plaintiffs' counsel wrote GM's counsel that "We need to have the Shrum vehicle inspected as she intends to dispose of it soon." Ex. 12 at 9. One day later, on November 15, 2022, Plaintiffs' counsel apologized for "missing" GM's earlier requests regarding Shrum's production, stating that he "thought [Plaintiffs] had produced documents" and "thought [he] had received" documents from Shrum, but that

he did "not have them from her yet." Ex. 8 at 1.

On December 5, 2022, the Parties confirmed that Shrum's vehicle inspection would take place on December 14, 2022. Ex. 12 at 6. That same day, Plaintiffs' counsel also purported to provide Shrum's production, stating:

> Libby,
>
> Here is Shrum's production.  Natives are located here: ☐ Shrum ShareFile with GM
>
> Thanks,
> Taylor

Ex. 9 at 1. GM reviewed Shrum's production and found only three photos, provided in the ShareFile link: two photos of Shrum's vehicle like those included in the Complaint, and one photo of a driveway leading to a house. Anderson Decl. ¶ 11. On December 13, 2022, counsel for GM wrote Plaintiffs' counsel explaining that "The only files included with [Plaintiffs'] December 5 email were the three photos provided in the Sharefile folder," and asking: "Was there supposed to be another attachment with the rest of Ms. Shrum's production?" Ex. 10 at 1.

### E. Shrum Discloses The September 15, 2022 Repainting On The Day Of The Inspection.

On December 14, 2022, GM's vehicle inspector and attorney arrived for the scheduled inspection of Shrum's vehicle only to be informed, for the first time, that Shrum had repainted her vehicle. When the parties discussed whether it was necessary to reschedule the inspection due to weather, Plaintiffs' counsel finally disclosed the repainting, stating: "your expert wants

pictures of the vehicle which reflects the original paint job and since the vehicle has been repainted pictures are not necessary." Ex. 11 at 1.

After GM pointed out that it had no prior notice that Shrum had repainted her vehicle, Plaintiffs' counsel claimed that "documents were produced well in advance of the inspection that showed payment of money to repaint her vehicle" (Ex. 12 at 2) and specifically that "her document production was on December 5, 2023 via email and ShareFile link" (*id.* at 1). But as GM had already explained, the ShareFile link contained only three photographs in native format, consistent with Plaintiffs' December 5 email stating that only natives were located in the ShareFile (Ex. 9 at 1). Counsel for GM attempted to check the ShareFile again on December 14 in response to Plaintiffs' claimed production, but the ShareFile link was no longer valid. Anderson Decl. ¶ 17. [4]

Later in the morning on the day of Shrum's inspection, Plaintiffs' counsel finally provided Shrum's production (Ex. 13 (attaching Shrum Production_001-014)), including a receipt in the amount of $4,600 from "Oscar's Body & Painting Inc." for "2015 Chevy Tahoe Painting" (Ex. 14 at 1). The receipt is

---

[4] Plaintiffs' counsel never informed GM that Shrum's ShareFile folder would expire. *See* Ex. 10. In contrast, Plaintiffs' counsel *had* informed GM that the ShareFile provided on November 15 for native files in Gary Ambrose's production would expire in ten days. Ex. 9. Curiously, however, the same was apparently not true for Shrum's ShareFile. GM attempted to verify on December 14—the ninth day after receiving Shrum's December 5 production email—whether the PDF production had been included in the ShareFile folder as Plaintiffs' counsel claimed, but the ShareFile link was already inaccessible. *See* Anderson Decl. ¶ 17.

dated September 15, 2022. Ex. 14. At Shrum's deposition on January 31, 2023, Shrum admitted that she had this receipt in her possession on September 15, 2022 (Ex. 1 at 126:7-10)—four days *before* Shrum falsely stated that "no responsive documents exist" regarding GM's request for documents related to any repainting of Shrum's vehicle (Ex. 4 at 4).

*       *       *       *

Regardless of whether Plaintiffs' counsel produced the September 15, 2022 painting receipt on December 5 or December 14, the fact remains that Shrum destroyed evidence central to her claims during the pendency of this litigation and failed to notify GM of her intent to repaint her vehicle, which thwarted GM's ability to inspect her allegedly defective paint and clearcoat.

## ARGUMENT

"[F]ederal law governs the imposition of spoliation sanctions," but courts may look to state law for guidance as long as it is consistent with federal law. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005); *Se. Mech. Servs., Inc. v. Brody*, 657 F. Supp. 2d 1293, 1299 (M.D. Fla. 2009). The Eleventh Circuit recognizes "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation" as spoliation. *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (excluding results from plaintiffs' testing of an allegedly defective part that plaintiffs destroyed without notifying defendants). Spoliation occurs when "(1) the evidence existed

at one time, (2) the alleged spoliator had a duty to preserve the evidence, and (3) the evidence was crucial [or critical] to the movant's . . . case or defense." *Se. Mech. Servs., Inc.*, 657 F. Supp. 2d at 1299. The sanctions of dismissal or an adverse inference jury instruction require evidence of bad faith. *Optowave Co. v. Nikitin*, 2006 WL 3231422, at *8 (M.D. Fla. Nov. 7, 2006) (citing *Flury*, 427 F.3d at 944-45; *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)).

Each requirement is readily met here, and dismissal of Shrum's claims (or, alternatively, her disqualification as a putative class representative) and assessment of attorneys' fees and costs is warranted.

## I.   SHRUM SPOLIATED EVIDENCE BY REPAINTING HER VEHICLE.

### A.   The Spoliated Evidence Existed at One Time.

Shrum's vehicle, with its original factory paint, "existed at one time." *Se. Mech. Servs., Inc.*, 657 F. Supp. 2d at 1299. The FAC alleges that Shrum's vehicle "has never . . . had any repainting done" and "has the original factory paint." FAC ¶ 46; *see also Id.* ¶ 52 (alleging that the vehicle continues to exhibit the purported defect "today"). And Shrum confirmed during her deposition that she did not repaint her vehicle before suing. Ex. 1 at 132:25-133:4.

### B.   Shrum Had A Duty To Preserve Her Vehicle With The Original Paint.

Shrum had a duty to preserve as evidence her vehicle with the original paint at least by the time she first filed suit on March 9, 2022. "[F]ederal law. . .

makes clear that that a litigant 'is under a duty to preserve what it knows, or reasonably should know, is relevant [to litigation or potential litigation].'" *St. Cyr v. Flying J Inc.,* 2007 WL 1716365, at *3 (M.D. Fla. June 12, 2007) (citation omitted) (alterations in original). In *St. Cyr*, for example, the plaintiffs were under a duty to preserve a van because they "contemplated litigation"—indeed, they had filed suit—and "it was reasonably foreseeable that the van would be relevant to the litigation," which concerned claims that a defect in the van's gas appliances caused a fire. *Id.*

All of Shrum's claims depend on her allegation that her vehicle had defective paint. FAC ¶¶ 56, 179, 189, 202, 213, 242. She maintains that "what appeared to be discoloration, microblistering, and delamination of the clear coat" on her specific vehicle was caused by a defect. FAC ¶¶ 49-50. The vehicle's paint is crucial evidence needed to assess whether Shrum's vehicle in fact had defective paint or clearcoat. Indeed, Shrum's complaint included photos of her vehicle's paint (FAC ¶ 52) precisely because she knew that the paint was crucial evidence. *See St. Cyr*, 2007 WL 1716365, at *3 ("Bolstering this indication [of a duty to preserve], is the fact that the [plaintiffs] took pictures of the damaged van before its destruction."). As the Eleventh Circuit held in *Flury*, Shrum "should have known that the vehicle, which was the very subject of [her] lawsuit, needed to be preserved and examined as evidence central to [her] case." 427 F.3d at 945.

- 10 -

Moreover, Shrum's counsel knew from negotiating the Inspection Protocol—executed *before* Shrum repainted her vehicle—that the car's paint was critical evidence that GM intended to inspect, including by "measur[ing] the total coating thickness of the vehicle's paint" and "measur[ing] and document[ing] any and all areas of damage or other conditions of the vehicle." Ex. 3 at 2-3. Shrum testified that she "was told" that the purpose of the Inspection Protocol "was to measure the thickness of the paint that was on the car." Ex. 1 at 42:13-17. In fact, the Protocol expressly provided that "Plaintiffs shall continue to preserve for inspection their currently owned or leased Subject Vehicle(s) until such time as disposition is permitted under this Protocol" (*i.e.*, "[a]fter GM completes an inspection" of the vehicle), that Plaintiffs "shall provide no fewer than forty-five (45) days' written notice to GM's Counsel" if they desire to "dispose" of the vehicle before an inspection has taken place, and that GM reserved its right to bring claims for spoliation of evidence if "Plaintiffs have removed parts of the Subject Vehicles prior to the inspection or otherwise permitted the Subject Vehicles to be modified, repaired, destroyed, or otherwise altered prior to the inspection." Ex. 3 at 4-5. This case is just like *Flury*, where the "plaintiff was fully aware that defendant wished to examine the vehicle" and failed to preserve it anyway. 427 F.3d at 945.

In sum, Shrum knew or should have known that her vehicle's paint was central in the action and that GM would request to inspect her vehicle's paint

during discovery. *See St. Cyr*, 2007 WL 1716365, at *3. Shrum therefore had a duty to preserve it.

### C.   The Spoliated Evidence Is Crucial To GM's Defense.

The destroyed evidence is crucial to GM's defense. "Courts have considered evidence 'crucial' where it 'would play a central role . . . in any ensuing lawsuit.'" *Tripp v. Walmart, Inc.*, 2023 WL 399764, at *4 (M.D. Fla. Jan. 25, 2023).

In *Flury*, for example, the plaintiff sued Chrysler for injuries allegedly suffered as a result of a manufacturing defect in the vehicle's airbag system. 427 F.3d at 940. The Eleventh Circuit held that the vehicle "was the very subject of [the plaintiff's] lawsuit" and "evidence central to his case." *Id.* at 945. By disposing of the vehicle before the defendant could inspect it, the plaintiff "deprived the opposing party of an opportunity to put on a complete defense." *Id.* at 947. The defendant "did not have an opportunity to examine" the vehicle, including the allegedly defective airbag system or "[the vehicle's] present condition." *Id.* at 946. "Without the vehicle, [the] defendant lost a valuable opportunity to test plaintiff's theory that the airbag was indeed defective." *Id.* "[D]irect examination of the vehicle's condition was critically important," and "[s]poliation of the vehicle forced experts to use much less reliable means of examining the product's condition." *Id.*

Similarly, in *Graff*, the Eleventh Circuit affirmed spoliation sanctions for the destruction of an allegedly defective boat part (called a "gimbal housing"), even though the defendant could have referred to plaintiffs' own testing of a portion of the gimbal housing or conducted testing on a surviving portion of the gimbal housing. 310 F. App'x at 302. The destroyed part "was *the* critical piece of evidence" in determining whether the gimbal housing was in fact defective, and its destruction "denied [the defendants] the same testing opportunities as [the] plaintiffs" and "prevented everyone . . . from receiving more reliable test results." *Id.* Likewise, in *Oil Equipment Co. v. Modern Welding Co.*, the Eleventh Circuit held the plaintiff's spoliation of the allegedly defective tank at issue resulted in "severe prejudice" because "it prevented [the defendant] from directly examining" the allegedly defective tank and "from developing evidence for the purpose of showing that the crack [at issue] was not caused by defective materials or workmanship." 661 F. App'x 646, 655 (11th Cir. 2016). Thus, the evidence was crucial, even though plaintiffs had photographs of the defective part and witnesses could testify as to the condition of the part. *Id.* at 656.

The paint on Shrum's vehicle goes to the heart of the case—it is the singular reason she sued. Shrum cannot genuinely dispute that the original paint and clearcoat is crucial evidence and that testing and inspecting it is a critical step in determining whether her paint was actually defective. That is

why, as explained, Plaintiffs agreed that GM would be provided the opportunity to inspect their vehicles *before* Plaintiffs modified, repaired, destroyed, or otherwise altered the vehicle. Ex. 3 at 4-5; *cf. Mooradian v. FCA US, LLC*, 286 F. Supp. 3d 865, 869 (N.D. Ohio 2017) (holding a plaintiff that "knew that [the defendant manufacturer] wanted to inspect [the plaintiff's] vehicle" therefore also "knew that they had a duty not to do anything to that vehicle that would or could materially alter it"). By agreeing to the Inspection Protocol, Plaintiffs acknowledged GM's need and intent to inspect Plaintiffs' vehicles by measuring the allegedly defective paint and documenting and assessing any areas of damage or other conditions of the vehicle. Ex. 3 at 3.[5] Moreover, Plaintiffs' counsel acknowledged during the inspection that GM's inspector "want[ed] pictures of the vehicle which reflects the original paint job" but obviously could not take them "since the vehicle has been repainted." Ex. 11 at 1. Further, it is common sense that GM's ability to measure the newly

---

[5] The Inspection Protocol distinguishes this case from *Arnold v. Charter Commc'ns, LLC,* 2022 WL 2275168, at *3 (M.D. Fla. June 23, 2022), where the defendant "never requested" or "specifically asked about" inspecting the plaintiff's vehicle, and the case did not involve an alleged vehicle defect. True, GM had not yet requested to *schedule* Shrum's vehicle inspection. But GM had made it abundantly clear that it intended to do so once GM's pleadings motions were determined, that Shrum was to preserve her vehicle in its current condition until GM completed its inspection, and that Shrum must provide GM an opportunity to inspect the vehicle before altering or otherwise disposing of her vehicle. Ample time remained for discovery, and GM had no reason to think that Shrum would disregard her preservation obligations and the agreed-upon Inspection Protocol by repainting her vehicle if GM did not immediately conduct its inspection. Indeed, the Eleventh Circuit in *Flury* reversed a district court that had declined to dismiss a spoliator's claims on the ground that the defendant had several months to follow up on its request to inspect the vehicle. *See Flury*, 427 F.3d at 942.

applied paint is no substitute for measuring and inspecting the allegedly defective paint. While the Inspection Protocol recognized that a vehicle may have been repainted (Ex. 3 at 5), that provision contemplated the possibility that some vehicles could have been repainted *before* the plaintiff contemplated litigation—not like Shrum's vehicle that she repainted after she sued over the condition of the original paint. And in any event, GM reserved its right to bring claims for spoliation of evidence.

Indeed, there is no replacement for physically inspecting the original paint to evaluate the condition of Shrum's vehicle and to identify the cause of her alleged paint concerns. Declaration of Michael Dziatczak ¶¶ 4, 10. To be sure, Shrum took two photos of her vehicle's hood in an attempt to document the alleged defect. But GM had no opportunity to take its own photographs. Dziatczak Decl. ¶¶ 7-8. And Shrum did not photograph any part of the car other than the hood, despite claiming that other parts of the car also had paint issues. Ex. 1 at 102:9-14; FAC ¶ 50. Moreover, Shrum's two photographs are no substitute for examining the actual evidence. *Flury*, 427 F.3d at 946 (stating that post-accident photographs and an accident report "[have] some value," but "defendant was precluded from obtaining much more reliable evidence"); *Oil Equip. Co.*, 661 F. App'x at 656 ("photographs of the bedding, however 'extensive,' likewise are no adequate substitute for direct examination of the bedding"); *Lidey v. Moser's Rides, SRL*, 2018 WL 6308012, at *5 (M.D. Fla.

Sept. 7, 2018), *report and recommendation adopted*, 2018 WL 6308697 (M.D. Fla. Sept. 26, 2018) (similar). GM had no opportunity to examine or assess the allegedly damaged area(s) to ascertain what might have caused any issues. Dziatczak Decl. ¶¶ 4-5, 9-10. GM did not have an opportunity to assess, for example, whether abrasive cleaning products might have contributed to any condition or observe if any other substances were on the vehicle. *Id.* ¶ 9. Now that Shrum has repainted her car, GM cannot test her claim that her paint issues were caused by a design or manufacturing defect—as opposed to other possibilities (including Shrum's own failures to maintain the vehicle properly)—leaving GM with Shrum's self-serving characterizations of the extent, pervasiveness, and nature of the condition of her car's paint and clearcoat. Dziatcak Decl. ¶ 9-10.[6]

For these reasons, this case is also distinguishable from *Wills v. Home Depot U.S.A., Inc.*, in which this Court held that the gas cap from an allegedly defective generator was not crucial evidence. 2019 WL 4410150 (M.D. Fla. Sept. 16, 2019) (Dalton, J.). *Wills* was a personal injury case in which the plaintiff alleged that the gas cap on his generator "blew off" and "showered" him in

---

[6] Shrum also alleges that when she brought her car to the Gordon Chevrolet dealership in November 2019, it supposedly "acknowledged the defect in the paint, indicating that it needed to 'strip bad paint' in order to repair the vehicle." FAC ¶ 50. But the evidence shows only that Gordon Chevrolet provided a quote, at Shrum's request, for the cost of repainting her car's hood and roof panel. Ex. 15 at 1-2. There is no indication that it in fact analyzed, tested, or measured the paint. And describing paint as "bad" is not the same as determining that the paint or clearcoat exhibited the alleged design or manufacturing defect.

gasoline, after which a spark from the engine ignited the gasoline and caused him severe burns. *Id.* at *1. The defendants were able to inspect the generator, but the generator's front panel and gas cap went missing. *Id.* at *2. The defendants moved for spoliation sanctions, arguing that the "gas cap is critical to their proximate causation defense because it could provide evidence to rebut Plaintiff's version of events and his experts' opinions." *Id.* at *4. The Court disagreed. For one, the plaintiff did *not* allege that the gas cap was defective, but that defective muffler mounting brackets in the generator caused the fire and the plaintiff's injuries. And there was ample other, equally strong (or stronger) evidence related to proximate cause available. *Id.* at *5-6. Here, in contrast, Shrum's alleged injury and claimed damages are all tied to the allegedly defective paint that Shrum removed from her car. GM has no other means of assessing whether (and to what extent) the paint on Shrum's specific vehicle was defective. Thus, the removed paint is crucial in a way that the missing parts of the generator were not in *Wills*.[7]

---

[7] In addition, the Court in *Wills* stated that, in order to obtain a spoliation sanction, the "'spoliated evidence must be so crucial as to completely prevent the movant from defending itself, not merely prevent the movant from defending itself completely.'" 2019 WL 440150, at *4 (quoting *Landry v. Charlotte Motor Cars, LLC*, 226 So. 3d 1053, 1058 (2d DCA 2017)). But the quoted portion of *Landry*, applying state procedural rules governing spoliation of evidence, makes clear that this is true only when dismissal is sought "based solely on prejudice to the movant"—that is, "in the absence of willfulness or bad faith." *Landry*, 226 So. 3d at 1058. GM has demonstrated Shrum's bad faith here, *see infra* pp. 18-21. Thus, this stricter standard does not apply, and its application would be inconsistent with Eleventh Circuit precedent like *Flury*, which governs the imposition of spoliation sanctions. *See Flury*, 427 F.3d at 947 (holding spoliated evidence was crucial where its destruction "deprived the opposing party of

### D.    Shrum Acted In Bad Faith.

Shrum acted in bad faith. "Generally, bad faith may be found where the plaintiff's actions are responsible for the spoliation of evidence and 'the plaintiff fully appreciated the significance of the evidence to the anticipated litigation.'" *Oil Equip. Co.*, 661 F. App'x at 653. In addition, even in the absence of direct evidence of bad faith, bad faith may be founded on circumstantial evidence when: "(1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Penick v. Harbor Freight Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1292 (S.D. Fla. 2020).

In *Flury*, the Eleventh Circuit "found the requisite 'bad faith' because the plaintiff knew both the location of the vehicle and the defendant's desire to inspect it," but nevertheless "'allowed the vehicle to be sold for salvage without notification to defendant of its planned removal.'" *Oil Equip. Co.*, 661 F. App'x. at 654 (discussing and quoting *Flury*, 427 F.3d at 944-45). Further, the

---

an opportunity to put on a complete defense"). That said, the allegedly defective paint was crucial evidence even under this stricter standard, for the reasons already stated.

Eleventh Circuit noted that the "plaintiff should have known that the vehicle, which was the very subject of his lawsuit, needed to be preserved and examined as evidence central to his case." *Flury*, 427 F.3d at 945; *Oil Equip. Co.*, 661 F. App'x at 657-58 (finding bad faith under similar facts). As the Eleventh Circuit has since confirmed, "it is no surprise that [the court] found bad faith" on these facts. *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1185 (11th Cir. 2020) (discussing *Flury*).

The facts here bear a striking similarity to *Flury*. Shrum knew that the vehicle needed to be preserved. She knew that GM sought to inspect her vehicle, and even agreed to an Inspection Protocol that obligated her to "preserve" the vehicle until GM could inspect it. Ex. 3 at 4. She knew that the inspection would involve measuring and evaluating the allegedly defective paint on her vehicle. *Id.* at 2; Ex. 1 at 42:13-17. And she knew, of course, that repainting the vehicle would necessarily destroy the paint and clearcoat she alleged to be defective. *E.g.* FAC ¶ 53 ("repainting the car would require sanding the vehicle to the metal"). Nevertheless, just two days after Plaintiffs signed this Inspection Protocol and without *any notice* to GM, Shrum deliberately took her car to a body shop and had the entire car repainted. Ex. 14; Ex. 1 at 117:16-21.

Plaintiffs might say that Shrum provided notice to GM that she intended to repaint her vehicle when she contacted GM customer service in early November 2019 and sent GM customer service a copy of the quote received

from her dealership for repainting her vehicle's hood and roof. But Shrum alleges that she had not repainted her car in the two-and-a-half years between the November 2019 customer-service chat and the filing of this lawsuit in March 2022, at which point she unquestionably was under a duty to preserve her vehicle. *See* FAC ¶ 46 ("Shrum's [putative] Class Vehicle . . . has the original factory paint"); Ex. 1 at 132:25-133:4. Shrum did not provide prior notice to GM that she was going to have her vehicle repainted on September 15, 2022—after filing suit and after entering into the Inspection Protocol.

Not only did Shrum fail to provide notice *before* she repainted her vehicle, but she also misrepresented the facts *after* she repainted her vehicle. Four days after obtaining the receipt documenting the repainting of her car (Ex. 1 at 126:7-10), Shrum falsely represented to GM that she had *no documents* responsive to GM's request for "all documents related to [any] repainting or application of clear coat" for her vehicle. Ex. 4 at 4. Two months after repainting her vehicle, Shrum informed GM that she "intends to dispose of [the car] *soon*"—conspicuously omitting that she had already repainted it. Ex. 12 at 9 (emphasis added). And her attorneys failed to produce the repainting receipt until the day of her inspection. Ex. 13 at 1; *see supra*, pp. 6-9.[8] The evasiveness

---

[8] Plaintiffs' counsel say they provided notice of the repainting on December 5, 2022, nine days prior to her scheduled vehicle inspection. Whether Plaintiffs produced the receipt on December 5 or December 14, the production was *months after* the vehicle was repainted and the damage was already done. Notably, this isn't the only example of Shrum's delay in producing relevant documents. GM's first set of requests for production specifically requested

with which Shrum and her counsel handled her spoliation is not necessary to a finding of bad faith, but certainly provides further support for it.

Simply put, there is no credible explanation for Shum's spoliation that does not involve "bad faith" as understood by the Eleventh Circuit in *Flury*. Nothing required Shrum to repaint her car on September 15, 2022 without any prior notice to GM and without providing GM an opportunity to first inspect her vehicle—and then fail to disclose the repainting until an inspector was literally looking at her car. Shrum intentionally repainted her vehicle without prior notification to GM and with full awareness that GM wished to examine the vehicle with the allegedly defective paint. Under *Flury*, those facts are more than enough to infer bad faith. 427 F.3d at 945.

## II.   SHRUM'S SPOLIATION WARRANTS DISMISSAL OF HER CLAIMS OR, ALTERNATIVELY, HER DISQUALIFICATION AS A PUTATIVE CLASS REPRESENTATIVE.

Sanctions for spoliation "are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Flury*, 427 F.3d at 944. The type of spoliation sanction to be imposed turns on: "'(1) whether the party seeking sanctions was prejudiced as a result of the destruction of

---

that Shrum "produce all nonprivileged documents, including without limitation correspondence, email, direct messages, text messages, and social media posts/comments, reflecting communications between you and any other person relating to the Alleged Defect." Ex. 4 at 5 (RFP No. 12). Shrum responded that she "would search for and produce any responsive documents in Plaintiff's possession or control." *Id.* But Shrum waited until the midst of her deposition on January 31, 2023 to produce to GM copies of Facebook posts and resulting email correspondence regarding the alleged defect. Ex. 16 at 1.

evidence and whether any prejudice could be cured, (2) the practical importance of the evidence, (3) whether the spoliating party acted in bad faith, and (4) the potential for abuse if sanctions are not imposed.'" *Tesoriero*, 965 F.3d at 1184.

Dismissal with prejudice is a severe sanction, but courts will not hesitate to grant dismissal when, as here, a party engages in intentional spoliation that prejudices the opposing party. In *Flury*, the Eleventh Circuit held that the district court abused its discretion when it denied dismissal and instead "conclud[ed] that a simple jury instruction could cure the resulting prejudice" from the plaintiff's spoliation of his vehicle, which prevented the defendant from testing the plaintiff's theory that its airbag was indeed defective; only dismissal would suffice. *Flury*, 427 F.3d at 946. Likewise, in *Oil Equipment Company*, the Eleventh Circuit affirmed the district court's decision to dismiss the case with prejudice, where "[w]ith knowledge that the evidence was critical to a potential lawsuit and to [the defendant's] potential defenses, [the plaintiff] destroyed or allowed the destruction of the [allegedly defective product] without providing [the defendant], as it had requested, notice and an opportunity to gather evidence in its defense." 661 F. App'x at 654.[9]

---

[9] *Cf. Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590-95 (4th Cir. 2001) (dismissing manufacturing defect suit where plaintiff had vehicle repaired before defendant could inspect it); *Remy v. Ford Motor Co.*, 2006 WL 3937343, at *5, *8 (V.I. Nov. 30, 2006) (dismissing case when relevant evidence plaintiff's control was discarded prior to defendant having an opportunity to inspect it, finding that "[a] lesser sanction than dismissal is thus inappropriate

Dismissal of Shrum's claims is warranted here, just as it was in *Flury* and *Oil Equipment Company*. As explained, repainting Shrum's vehicle destroyed evidence central to this alleged paint defect case, and the degree of prejudice resulting from Shrum's repainting of her vehicle is substantial. Shrum says her paint issues were caused by a design or manufacturing defect. Critical to GM's defense was an opportunity to measure and test that paint and see what it had been exposed to, what contaminants it could detect, and how Shrum cared for her car. Now, GM cannot examine the condition of the paint on Shrum's vehicle, determine whether there is any bubbling, peeling, or flaking of the paint or clearcoat on the hood or any other part of her car, or determine whether any such conditions are due to an alleged defect or some other unrelated cause. Dziatczak Decl. ¶¶ 3, 9. It would be highly prejudicial to allow Shrum to put forth any of her own testimony and evidence of allegedly defective paint on her vehicle when Shrum's conduct denied GM the ability to fully test those assertions. And as explained above, Shrum acted in bad faith as articulated by the Eleventh Circuit in *Flury*. Nobody compelled Shrum to repaint her vehicle in the middle of this litigation; she is solely responsible for

as it does not cure the prejudice" to defendant); *Beers v. Gen. Motors Corp.*, 1999 WL 325378, at *1, *9 (N.D.N.Y. May 17, 1999) (dismissing case when plaintiff's expert witness disassembled and irreparably altered allegedly defective product and eventually lost it, and no adequate lesser sanction existed to cure prejudice to defendant.); *Allstate Ins. Co. v. Sunbeam Corp.*, 865 F. Supp. 1267, 1278 (N.D. Ill. 1994) (dismissing product liability claims).

- 23 -

intentionally disregarding her preservation obligations under both the Federal Rules of Civil Procedure and the Inspection Protocol to which she agreed.

This case is on all fours with *Flury*, in which the Eleventh Circuit concluded that nothing short of dismissal would be sufficient to address the prejudice caused by similar spoliation of evidence to what Shrum did here. Accordingly, the Court should dismiss Shrum's claims with prejudice. Alternatively, at the very least, the Court should disqualify Shrum as a putative class representative, as her spoliation demonstrates that she is an inadequate representative. *E.g.*, *Falcon v. Philips Elecs. N. Am. Corp.*, 304 F. App'x 896, 897 (2d Cir. 2008) (affirming district court's finding that the plaintiff could not serve as an adequate class representative because she had disposed of the product at issue); *Mooradian*, 286 F. Supp. 3d at 870 (disqualifying plaintiff from serving as a class representative because he altered his vehicle despite knowing that the defendant wanted to inspect it); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 358 (N.D. Cal. 2018) ("[E]ven if the Court does not actually sanction [the plaintiff,] the issue of spoliation can still render him an inadequate representative"); *Pagan v. Abbott Lab'ys, Inc.*, 287 F.R.D. 139, 150 (E.D.N.Y. 2012) (finding plaintiff subject to unique legal and factual issues, including whether her "act of discarding her recalled Similac before it could be tested constituted spoliation of evidence," was an inadequate class representative).

## III.   THE COURT SHOULD AWARD GM THE ATTORNEYS' FEES INCURRED IN BRINGING THIS MOTION.

GM also requests that this Court exercise its inherent authority to sanction Shrum for her bad faith spoliation by awarding the attorneys' fees and costs that GM incurred in bringing this Motion, and by granting any other relief this Court deems appropriate for Shrum's spoliation. *See, e.g.*, *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1287-88 (M.D. Fla. 2009) (awarding attorneys' fees and costs as a spoliation sanction pursuant to the court's inherent authority); *Tripp*, 2023 WL 399764, at *9 (same).

## CONCLUSION

For the foregoing reasons, GM requests that the Court dismiss Shrum's claims with prejudice (or, alternatively, disqualify her as a putative class representative) as a sanction for spoliation, and award GM its attorneys' fees and costs in bringing this Motion.

## **Local Rule 3.01(g) Certification**

In accord with Local Rule 3.01(g), counsel for GM conferred with Plaintiffs' counsel via email, including on February 15, 2023, and by phone on February 21, 2023. Plaintiffs oppose this motion.

DATED: February 22, 2023                    Respectfully submitted,

By: *Jonathan S. Klein*                    */s/ John Nadolenco (pro hac vice)*
Florida Bar No. 125254                    *jnadolenco@mayerbrown.com*
*jklein@mayerbrown.com*                    MAYER BROWN LLP
Archis A. Parasharami (*pro hac vice*)    333 South Grand Avenue 47th Floor

*aparasharami@mayerbrown.com*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Phone: (202) 263-3000
Fax: (202) 263-3300

Los Angeles, CA 90071
Phone: (213) 229-9500
Fax: (213) 576-8179

Justin B. Weiner (*pro hac vice*)
*weiner@bsplaw.com*
BUSH SEYFERTH PLLC
100 W. Big Beaver Road Suite 400
Troy, MI 48084
Phone: 248-822-7851

*Attorneys for General Motors LLC*

## CERTIFICATE OF SERVICE

I certify that on February 22, 2023, I filed the foregoing document on CM/ECF, which automatically and electronically delivered notice of filing to counsel of record for all parties that have appeared.

*/s/ Jonathan S. Klein*